SCOTT E. WALLACE V. THE STATE.

No. 21951. Delivered March 25, 1942.

The opinion states the case.

*E. M. Critz*, of Coleman, for appellant.

*Howell E. Cobb*, District Attorney, of Brady, *Baker & Baker*, of Coleman, and *Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was charged by indictment in the District Court of Coleman County with the offense of murder and, upon conviction, was assessed a penalty of two years in the penitentiary, from which he appeals.

It is alleged that the offense was committed on the 5th day of July, 1941, while driving a motor vehicle on a public highway under the influence of intoxicating liquor and that in so driving, through accident and mistake, caused his automobile to collide with another automobile in which Mary Alice LeSuer was riding and that he thereby did jar and bruise the body of deceased and set fire to the car which caused the burning of the body of the deceased, resulting in her death.

The record brings for our consideration a motion to quash the indictment, a motion for a continuance, and a number of objections to the court's charge. Eighteen bills of exception are found in the record. Most of these are matters which will not occur upon another trial and a necessity for discussion of them is eliminated by the holding herein. All other questions not specifically discussed and sustained are overruled.

We have been much disturbed over the question of the sufficiency of the evidence to show intoxication as alleged. However, in view of the fact that this may be presented in a different manner upon another trial it is considered sufficient herein to say that some members of the Court are doubtful as to the sufficiency of the evidence in the present record.

Appellant's bill of exception number five complains of the admission in evidence of the testimony of Homer Bailey and the conclusion which he reached as to the speed of the car which appellant was driving at the time of the accident. The accident occurred in the night time and no testimony is given by eye witnesses as to the speed of either car. Mr. Beck, the driver of the car in which the unfortunate young lady was riding, estimated that he was going at a speed of approximately forty miles per hour and traveling on a highway north toward the City of Coleman. Appellant was driving in the same direction and gives his estimate of the speed at which he was driving at a little more than that of the Beck car. He accounts for the collision by saying that the Beck car had no tail light; that he was meeting another car with blinding lights; that he signaled them to dim their lights, but they declined to do so, and the confusion was the cause of the collision.

Aside from the testimony of the witness Bailey and of the physical facts which are without dispute and indicate the condition of the cars, the issues are disputed which relate to the question of speed. This question becomes very important in the consideration of the case and, no doubt, was so considered by the jury in determining the probability of the cause of the accident as detailed by appellant and relied upon as defense. Bailey's statement was probably the determining evidence and, therefore, deserves the attention which the writer has given to the law involved.

The question of the admissibility of this evidence is a very difficult one. Just when a witness, expert or non-expert, may give such testimony must depend upon the facts of each case, at least to a large degree. Many civil cases have held very similar testimony to be admissible, but we doubt that the better considered ones would admit the evidenec under all of the conditions detailed in the bill of exception. We are without authority under the holdings of this Court so far as we have been able to analyze them to sustain the State's contention and the several cases presented by the State fail utterly to do so.

The witness was a highway patrolman with three and one-half years' experience in the enforcement of the traffic laws in particular and all kinds of criminal laws in general. He had observed wrecks and reported on them. He had observed the speed of moving automobiles. This is chiefly the experience detailed to qualify him to give the conclusion which he did. He went on the ground to investigate the collision and found the two automobiles. Both had turned over and one, the Beck car, had been burned. It was out in a pasture, while the other car was on the right-of-way. The Beck car "was a complete, total wreck. It was burned and all that was left was the metal parts that would not burn." He said he observed the Beck car "with reference to impact. What he found is not described. He observed the fence posts, but he does not detail what he saw. The wreckage of the car was resting against a Live Oak tree, but there is no further description. He observed the bar ditch that it had crossed, but he does not detail anything with reference to it that would throw any light on the subject. He observed the defendant's car, but he does not tell what there was about it that would aid him in reaching his conclusion. He observed marks on the highway, but nothing is related and it is not revealed just how these marks aided his conclusion. The Beck car was seventy-six steps from the point of impact and appel-

lant's car was fifty-two steps. There were other marks on the highway which showed a tire had skidded there. He says, "There was a scarred or scraped place on the pavement, and the skid mark went between the scraped place of the pavement and the automobiles. Skid marks went to both cars." As a further qualification the witness stated that he had driven an automobile for fifteen years, during which time he had observed quite a few wrecks, the speed of automobiles, and had made special study to determine the speed and the causes of wrecks and automobiles to some extent, but he does not say how much.

The foregoing fairly details the qualification given upon which he was permitted to answer a hypothetical question and reach a conclusion that appellant's car was being driven at a speed between seventy-five and eighty miles per hour. Objection raised to this testimony embraced, among other things, the grounds that the witness was not shown to be qualified, not shown to have any knowledge of mechanics, "or what conditions would produce the conditions mentioned in the question or shown to have existed after the wreck." That he is not shown to have seen the wreck or to have had experience with reference to those matters that would cause this wreck and produce the conditions found after the collision.

We are impressed with the fact that merely the experience of driving an automobile for fifteen years and three and one-half years' experience in the enforcement of law and observing the speed of automobiles would be insufficient to enable the witness, or any other person, to reach the conclusion in the present or a similar case so definite as that given by him. Probably any juror during this day and time would have as much experience and be just as capable of drawing a conclusion as was the witness. He could have detailed the facts and let the jury reach their own conclusion, which was their exclusive province.

We wish to mention but briefly the cases cited and relied upon by the State:

*Rice v. State*, 94 S. W. 1025, holds that a graduate of a school of medicine who had practiced for a number of years was competent to give an opinion that death was caused by strychnine poisoning even though he had never before come in contact with a case of strychnine poisoning in his practice. His

knowledge was based upon reading and study. This was held to qualify the witness.

*Guse v. State*, 260 S. W. 852, has nothing in it remotely in point.

*Landry v. State*, 35 S. W. (2d) 433, holds the opinion of a physician to be admissible as to the caliber of a pistol which caused the wound. He was shown to be familiar with gunshot wounds and the caliber of firearms.

*Winn v. State*, 126 S. W. (2d) 481, holds that a physician who said he was not an expert as an alienist or specialist, nevertheless, could testify and be cross examined as to his conclusions on the affliction suffered by appellant at the time of the commission of the offense. The evidence showed he had studied mental diseases of the nature the defendant claimed to have been afflicted with at the time involved.

*Bell v. State*, 268 S. W. 168, was a case in which a bank cashier was permitted to testify to handwriting, even though he said he did not consider himself an expert. He detailed an experience in examining signatures and writings which the court held to be sufficient to qualify him to testify.

*Carr v. State*, 7 S. W. 328, sustained the trial court in admitting the opinion of a party familiar with a child over nine. years of age, but under fifteen years of age, to the effect that the child understood the illegality of the act. The discussion here under consideration is entirely foreign to the matter before us.

*Graham v. State*, 13 S. W. 1010, held admissible evidence which described the appearance of certain bruises found upon the forehead of an injured party and to state that they were "made with a hard rough substance or otherwise." The answer to a question embracing the foregoing quoted matter was "said bruises seemed to have been made with a rough, hard substance." The court there said no material error was pointed out by the objection. We find nothing helpful in this opinion in deciding the question before us.

It is not intended hereby to indicate a condition which might exist or qualifications which might be given making admissible the conclusion which a witness may give as to the speed of an

automobile. Circumstances are too varied and too many factors may present themselves for consideration. It is sufficient to say and we do not intend to go further than to hold herein that under the facts testified to by the witness, under all the circumstances of this case, he has not shown himself to be in a position to reach a conclusion as to the speed of appellant's car so definitely and to aid the jury beyond what the physical facts of the case, most of which appear to be without dispute, would do.

The judgment of the trial court is reversed and the cause remanded.