SCOTT E. WALLACE V. THE STATE.

No. 22414. Delivered February 24, 1943.
Rehearing Denied May 5, 1943.

The opinion states the case.

*Gib Callaway,* of Brownwood, *C. L. South* and *E. M. Critz,* both of Coleman, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the offense of negligent homicide while in the performance of an unlawful act, and by the jury sentenced to serve two years in the county jail.

This is the second appeal of this cause, the first being reported in 160 S. W. (2d) 256, 143 Tex. Cr. R. 596.

The facts shown by the State herein evidence that on July 5, 1941, at near 11 o'clock at night, on the public highway from Brady in McCulloch County to Coleman in Coleman County, appellant ran his car into the rear of the car of Mr. Beck, who was accompanied by Miss Mary Alice LeSeuer, and caused the death of Miss LeSeuer. The negligent and unlawful act charged against appellant being that he was at such time driving his car at a greater rate of speed than 55 miles per hour. There is no reason to repeat the full testimony, it being to a large extent similar to that of the first trial. However, it is to be noticed here that the State produced a new witness who testified as to appellant's speed a short time prior to the accident being in excess of 55 miles per hour. Despite appellant's testimony to the contrary, the jury evidently believed such witness, and we think it sufficient to say that such was their province, and the facts impress us as being of sufficient force to uphold their verdict. That appellant was traveling at a high rate of speed can be gathered from the physical facts. His car struck the rear end of the Beck car, mashed it in, and the Beck car was found about 73 steps from the point of impact, across the road, over a ditch, through a fence and against a tree. The impact sprayed gasoline over the Beck car, as well as appellant's car, setting both cars afire, and burning the young lady to death. Evidently the testimony of the witness, Mexican though he might have been, found corroboration in the facts on the ground at the scene of the accident.

Appellant complains because, after this cause had been reversed by this court, the State's attorney prepared another and different indictment, which was returned by the grand jury, and while the previous indictment was pending the trial court called him for trial upon this present new indictment. Appellant says that such an action was erroneous, and that it was the duty of the trial court to first dispose of the original first indictment before calling the later case. He cites us to the case of State v. Anderson, District Judge, 119 Tex. 110, 26 S. W. (2d) 174, 69 A. L. R. 233. In that case it appears that the district judge, without the consent of the prosecuting attorney, had dismissed about 38 cases against two defendants, over the protest of the State's attorney. In a learned opinion by Judge Leddy it was shown that under the common law the State's attorney alone had the power of entering a nolle prosequi and causing the dismissal of criminal cases. The Legislature of this State saw fit

to change such common law rule by adopting a different rule as is shown by Art. 577, C. C. P., which reads as follows: "The district or county attorney may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal. No case shall be dismissed without the consent of the presiding judge."

It was noted in State v. Anderson, supra, that the power of dismissal of a criminal cause rested primarily in the initiative of the State's attorney, but also required the consent of the presiding judge. We think that case correctly decided the law and laid down the proper procedure. However we do not think the same is in point relative to appellant's contention herein. It is shown by the bill that while this trial proceeded, nothing whatever was done with the first case, but the court merely left the same on the docket while trying the instant case, and a short time after this trial, upon an oral motion of the district attorney, the earlier cause against appellant was by the trial court dismissed. The trial court qualified this bill No. 1 by saying, among other things, that: "The defendant at no time offered any evidence showing any injury or injustice to him as a result of the trial of cause No. 3327-A prior to the trial of cause No. 3318-A, nor did he contend that any injury or injustice had been done to him as a result thereof, but merely contended that the cases should be called and disposed of in the order in which they appeared on the docket."

The order of calling the docket is largely discretionary with the trial court. Simpson v. State, 263 S. W. 273, 97 Tex. Cr. R. 57.

In the case of Robinson v. State, 56 Tex. Cr. R. 62, 118 S. W. 1037, there were two indictments against the accused, the second one being for the purpose of curing a defect in the first one. This court held it was proper for the second case to be called and tried, especially in view of the trial court's statement in the bill that it did not appear that defendant would be deprived of any right or defense by granting the request of the district attorney to try the second case. We also held in the case of Carter v. State, 44 Tex. Cr. R. 312, 70 S. W. 971, that the pendency of another indictment for the same offense, or for an offense growing out of the same act, cannot be pleaded in abatement or in bar of the indictment. See Schindler v. State, 15 Tex. App. 394.

It is true, as appellant contends, the statute, Art. 577, C. C. P., requires that the dismissal of a criminal cause should be initiated by the filing of a written motion by the State's attorney, which must receive the sanction of the court. This written motion seems not to have been filed; but we can see no possible reason why such an irregularity could have affected appellant to his injury in any way, nor deprived him of any right or of any defense.

We have heretofore held in the case of Ex parte Rusk, 128 Tex. Cr. R. 135, 79 S. W. (2d) 865, that the portion of Art. 577, C. C. P., relative to the motion of the State's attorney being in writing, was merely directory not mandatory, and an oral motion of the attorney that obtained the desired result was sufficient. Also see cases there cited.

Bill of exceptions No. 2 seems to us to be without merit, and is overruled.

Bill of exceptions No. 3 relates to the following occurrence: During the cross-examination of appellant while on the stand, a recess was had, and it appeared that appellant had some kind of conversation with one of his attorneys during such recess. Upon a resumption of the trial, appellant was asked by one of the attorneys representing the State if he did not have a conversation with one of his attorneys during the recent recess of the trial. To this question and any answer thereto appellant objected, and his objection was by the court promptly sustained; nevertheless appellant's attorney took a bill to the asking of such question, at which time a private prosecutor said: "We want the bill to show that no response was made by the witness to the question." We think the bill should have shown that the witness did not answer the question that the trial court very promptly sustained an objection to, but we would be called upon to imply intonations or hidden meanings as to the statement of the private prosecutor before we could see any error herein. This we are unable to do. As it appears to us, this was but an effort to see that the complained of matter should be fairly placed before this court, and the prompt ruling of the trial court divested the occurrence of any probable error.

It appears that appellant had about a case and a half of beer in the back of his car at the time of the accident. That immediately after the collision he went to the back of his car, opened it up and disposed of this beer by turning it over to some stranger present, and asking him to take it away from the scene of the

collision. Bill No. 3 complains of an effort on the part of the district attorney to get appellant, while on his cross-examination, to tell what was the reason he wanted to get rid of this beer. After quite a lengthy examination, the appellant finally wound up by saying that he did not know why he wanted to get rid of this beer .We think the bill merely evidences an unsuccessful effort on the part of the district attorney to get appellant to tell the facts as to the possession of such a quantity of beer, especially in view of the tragedy that occurred by reason of this regrettable accident. We see no error evidenced in such proceedings.

Finally, appellant contends that he was violating no law at the time of the accident, and therefore should not have been found guilty of negligent homicide in the second degree. He offers in proof thereof the testimony of appellant that at the time of the accident he was traveling not faster than 55 miles per hour. The State offered the testimony of a Mexican who stated that appellant passed the Mexican a mile or so south of where the collision occurred at a high rate of speed, estimated at about 80 miles per hour, and in but a few moments the Mexican came up to the wreck and saw appellant's car, which was in the wreck, and it was the same car that had passed him at the high rate of speed some minutes before. The physical facts were shown upon the ground; the distance the burned car was thrown was about 80 steps across the road, over a bar pit through a fence and against a tree; the rear end was smashed, a trailer hitch broken, the gasoline tank mashed against the differential, the frame bent, the car covered with gasoline and set afire, as well as the appelant's car being also covered with gasoline and set afire; the hood was knocked open, the air cleaner knocked some distance away; all these physical facts doubtless convinced the minds of the jurors that the appellant was surely driving at a high and dangerous rate of speed on this moonlight night, in excess of 55 miles per hour; appellant's indulgence in the drinking of beer during the afternoon, his fast or unskillful driving, as testified to by a witness, and his conduct as described by another witness, evidently did not assist him in presenting his defense to the jury.

We fail to see wherein there is any peculiarity or redundancy in the charge herein. It is charged that appellant voluntarily killed Mary Alice LeSeuer by striking the car in which she was riding with appellant's car. It is nowhere charged therein that he intentionally killed her, but the charge being in effect that he voluntarily drove his car at such rate of speed that

he struck her and caused her death. The causing of her death, of course being unintentional, made so by statute, otherwise the more serious offense of murder would have been presented. If he did not so voluntarily drive his car, then he should have been acquitted. If he drove the same under duress, or within the law, no offense would be predicated for the second degree of negligent homicide. The statute itself says: "To bring the offense within the definition of negligent homicide either of the first or second degree, there must be no apparent intention to kill," Art. 1235, P. C., but the homicide must be the consequence of the act done. Art. 1236, P. C. We see no incongruity in the statement in Totten v. State, 113 S. W. (2d) 196, wherein we said:

"We also confess ourselves unable to see how under an indictment charging an offense voluntarily and intentionally done, such allegation can be supported by proof of one done by accident and mistake."

This appellant, although charged with murder, was presented before the jury charged with negligent homicide by virtue of the statute, Art. 695, C. C. P., with committing a misdemeanor, which was negligent, the result thereof not being in his mind at the time he was speeding along the highway; he surely did not intend to kill the young lady, to burn her to death, but such an unfortunate culmination, doubtless regretted by him, was caused by his own voluntary act of improper driving, thus causing him to violate not the act against murder but the negligent homicide act and to receive a punishment of two years in the county jail.

We still think that the statute, Art. 695, C. C. P., which states that a charge for murder includes all the lesser degrees of culpable homicide, carries with it a charge of negligent homicide, and that appellant, who was presented to the jury under a charge of negligent homicide in the second degree, under an indictment for murder without malice, has no ground for complaint.

We think the trial court's charge fully presented the law as applied to the facts in this cause.

Perceiving no error evidenced herein, the judgment is affirmed.

## ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant has filed quite a lengthy motion for rehearing in which he contends that the evidence is insufficient to justify and sustain his conviction. He asserts, and properly so, that there are only two ultimate issues of fact in this case: First, was appellant, at the time of the commission of the alleged offense, driving his automobile at a speed in excess of 55 miles per hour; and second, that while so doing did he, by carelessness or negligence, cause his automobile to collide with the car being driven by Mr. Beck, who was accompanied by Miss Mary Alice LeSeuer, resulting in her death?

We think the questions presented by appellant in his motion for rehearing have been fully discussed in the original opinion. However, with the view of more clearly demonstrating the correctness of our holding, we make the further observation: The Mexican, whom appellant passed on the highway about one and one-half miles from the scene of the collision, testified that the car passed him traveling at about 80 miles per hour. Appellant contends that this is too uncertain to show, beyond a reasonable doubt, that he was driving at a speed in excess of 55 miles per hour at the time of the collision, as charged in the indictment. But, what about the circumstance proven showing the result of the collision? The proof shows that appellant struck the Beck car with such tremendous force that the impact threw it 73 steps across the road, over a ditch, through a wire fence and against a tree. Mr. Beck testified that he was driving about 40 miles per hour and that the car driven by appellant overtook him. This demonstrates to any reasonable mind that the car was traveling at a very high rate of speed. This supports and makes more certain the testimony of the Mexican as to the speed at which the car was moving.

Second, was appellant operating his automobile at the time and place in question in such a manner as a reasonably prudent person would not have done under the same or similar circumstances? If so, he was guilty of negligence; and this was an issue for the determination of the jury from all the facts and circumstances submitted to them under the ruling of the court.

Appellant complains of the evidence showing that he had a case of beer in the trunk of his car. He contends that the presence of beer in the car did not tend to establish negligence. He seems to overlook the fact that in the first count of the indictment he was charged with driving an automobile on the public highway while intoxicated and that while under the influence of intoxicating liquor he did then and there, through mis-

take or accident, kill Mary Alice LeSeuer. Under this count of the indictment the evidence was admissible, to say nothing of the fact that it was a part of the res gestae. It is true that the court, at the conclusion of all the evidence, submitted the case to the jury on the second count alone, but so long as the State, in the development of the case, proceeded on both counts, the evidence was admissible.

Appellant next contends that we erred in not sustaining his Bill of Exception No. 3 relating to a certain question propounded to him by the District Attorney, which was objected to and which objection was sustained; whereupon the private prosecutor remarked: "Let the bill show that no response was made by the witness to the question." While the question should not have been propounded, still, in view of the fact that the court promptly sustained the objection and the witness had not answered the question, no reversible error is shown. The request on the part of the private prosecutor to let the bill show that the witness did not answer the question was, in our opinion, proper: first, to let the bill reflect just what did occur; and second, it would be useful in the event of a bystanders' bill.

Believing that the case was properly disposed of on the original submission, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.